**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| CEATS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CONTINENTAL AIRLINES, INC., et al., )<br>)<br>Defendants. )<br>) | Case No. 6:10-cv-120 LED |

**CEATS' RESPONSE IN OPPOSITION TO TICKETS.COM'S
MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Plaintiff CEATS, Inc. respectfully requests that the Court deny the motion by Defendant Tickets.com, Inc. to compel CEATS to produce documents protected by the attorney-client privilege and work product doctrine.

CEATS has worked diligently—and, to a large degree, successfully—with Tickets.com to narrow this dispute. Tickets.com attempts to portray CEATS' efforts to cooperate as proof that documents on CEATS' privilege log somehow are not privileged. To the contrary, CEATS compromised as much as possible to avoid unnecessary discovery disputes so as to focus on the merits of the case. But Tickets.com's positions regarding the documents still in dispute are unreasonable. Tickets.com demands that CEATS produce emails between CEATS and its trial counsel at McDermott Will & Emery about this case. Tickets.com seeks attorney-client communications regarding the prosecution of the patents-in-suit. Tickets.com insists that CEATS produce its work product because, as a company without an operating business, it should not be entitled to work product protection. In the face of these unreasonable positions, CEATS

can compromise no further. CEATS cannot risk waiver by producing documents that are plainly privileged or work product.

The Discovery Order provides that when a motion to compel privileged documents is filed, the party asserting privilege shall, within 30 days, provide the Court with documents over which privilege is asserted for *in camera* review. (Doc. No. 386 at ¶ 5). CEATS will do so. For the reasons stated below, however, CEATS respectfully submits that the Court can affirm CEATS' attorney-client privilege and work product protection without conducting a review of each document.

## STATEMENT OF FACTS

*The Asset Purchase and Sale Agreement and History of CEATS*

On October 14, 2008, pursuant to an Asset Purchase and Sale Agreement, MSI assigned its intellectual property to CEATS. *Motion Ex. 1*. CEATS then proceeded to take over MSI's former business of prosecuting and enforcing the patents-in-suit. *Skane Decl.* ¶ 5. Lacking any assets, MSI has not performed any of its own business since the execution of the Asset Purchase and Sale Agreement, except for corporate wind-down activities. *Id.* ¶ 6.

*Legal Counsel*

The patents-in-suit were originally prosecuted by the law firm Blakely Sokoloff Taylor & Zafman LLP ("Blakely") for MSI. *Id.* ¶ 7. MSI also engaged attorney Gary Wykidal to represent it in various matters unrelated to the prosecution of the CEATS patents. *Id.* ¶ 8.

On September 12, 2008, the law firm Knobbe Martens Olson & Bear LLP ("Knobbe") took over responsibility for prosecution of the patents. *See Motion Ex. 9*. CEATS continued to work with Knobbe after it acquired MSI's intellectual property rights. *Skane Decl.* ¶ 9. CEATS also worked with Knobbe to explore its options in enforcing its patents rights and to identify

potential defendants in a patent infringement suit. *Id.* ¶ 10. During this time, Knobbe was pitching itself as litigation counsel for CEATS with respect to the claims that were ultimately brought in this action. *Id.* CEATS ultimately selected McDermott Will & Emery LLP ("McDermott") to bring the present litigation

During its corporate history, CEATS' officers have included Milford Skane, Phillip Trad, and Doug DeCinces. Although Mr. Trad is an attorney, he does not serve as in-house counsel for CEATS.

***The Parties' Dispute***

CEATS served its original privilege log on April 15, 2011. *Motion Ex. 7.* On April 27, 2011, Tickets.com sent a letter to CEATS asserting that documents dated before October 14, 2008 – the date of the Asset Purchase and Sale Agreement – could not be privileged. That same day, CEATS responded by noting that the common interest privilege extends protection to the privileged MSI documents subsequently shared with CEATS. During a series of correspondence that took place in May and early June of 2011, Tickets.com specifically challenged approximately 70 documents. CEATS continued to disagree with Tickets.com's position that the prosecution documents were not privileged, but produced approximately 40 documents in either full or redacted form and further produced another eight documents under the condition that Tickets.com stipulate that CEATS did not waive privilege by producing these documents.

On September 2, 2011, counsel for other Defendants wrote to CEATS requesting that CEATS produce documents that it had originally withheld for attorney-client privilege on the grounds that Phillip Trad was acting as in-house counsel. CEATS considered Defendants' request and, on September 13, 2011, produced approximately 60 documents.

In October, the dialogue with Tickets.com regarding the privilege log resumed. Tickets.com renewed its demand for production of the MSI documents and asserted new demands for a number of additional documents listed on CEATS' privilege log. Once again, CEATS agreed to produce certain documents in an effort to narrow the dispute, and CEATS did so.

Tickets.com filed this motion on November 15, 2011. Discovery closes December 8, 2011.

## ARGUMENT IN OPPOSITION

Tickets.com requests this Court to compel the production of four categories of documents: (i) documents related to the prosecution of the patents-in-suit; (ii) documents subpoenaed from MSI's former attorney Gary Wykidal (iii) emails chains that contain the legal advice of CEATS' attorneys; and (iv) documents protected by the work product doctrine.[1] CEATS has properly claimed privilege over the documents at issue and seeks to prevent their disclosure.

### I. MSI's Communications with its Prosecution Counsel Are Privileged.[2]

Tickets.com challenges privileged MSI documents that are now in the possession of CEATS or its counsel. These documents are protected from disclosure based on the common interest privilege. MSI has filed a motion for a protective order to prevent the waiver of its privilege. CEATS agrees with MSI that MSI did not waive the privilege when these documents were shared with CEATS in the context of this litigation. CEATS further agrees that the

---

[1] While Tickets.com mentions Entries 2, 12, 569, and 570 in footnote 1 of its motion, it does not specifically request that the Court order the production of these documents. However, CEATS produced the corresponding documents to Defendants before the motion was filed.

[2] This argument applies to Entry Nos. 11, 575-579, 581, 586-591, 594, 597-601, 603, and 605. CEATS is producing the document identified as Entry No. 602.

4

common interest applies to protect these documents. CEATS incorporates MSI's argument by reference

Even if the Court does not accept MSI's position that its privilege with its attorneys remains intact due to the common-interest privilege, the prosecution-related communications are still protected on the alternative ground that the attorney-client privilege was transferred from MSI to CEATS through the execution of the Asset Purchase and Sale Agreement. In its motion, Tickets.com cites to *Soverain Software LLC v. Gap, Inc.*, 340 F. Supp. 2d 760 (E.D. Tex. 2004) for the proposition that "a mere transfer of some assets or a single patent from one corporation to the other does not transfer the attorney-client privilege." *Motion* at 6 (quoting *Soverain Software*, 340 F. Supp. 2d at 763). In *Soverain Software*, the Court <u>rejected</u> this bright-line rule, stating:

> "[T]his bright-line rule does not apply equally to the myriad ways control of a corporation or a portion of corporation can change hands. The Court finds the more appropriate rule to be whether the attorney-client relationship transfers to the new owners turns on the practical consequences rather than the formalities of the particular transaction . . . If the practical consequences of the transaction result in the transfer of control of the business and the continuation of the business under new management, the authority to assert or waive the attorney-client privilege follows as well."

340 F. Supp.2d at 763. Thus, in *Soverain Software*, the Court found that the privilege had transferred because the new company "not only acquired certain assets [such as the patents], but also continued to operate the [] business." *Id.*; *see also Crane Co. v. Sandenvendo Am. Inc.*, No. 2:07-cv00042-CE, No. 192, at 2 (E.D. Tex. June 19, 2009) (holding, under *Soverain Software*, the attorney-client privilege was transferred to the new company because the new company continued to operate the old company's business and became successor to the old company's contracts).

Here, the Asset Purchase and Sale Agreement did more than simply transfer MSI's interests in the patents to CEATS. Prior to the execution of the Asset Purchase and Sale Agreement, MSI's sole business was to prosecute and prepare to enforce the patents-in-suit. *Skane Decl.* at ¶ 4. By transferring its intellectual property rights to CEATS, MSI essentially transferred everything it had to CEATS. Furthermore, the transfer came with a promise by CEATS to pay all of MSI's known debts. After the Asset Purchase and Sale Agreement was executed, MSI was left with nothing – no assets and no known obligations. CEATS essentially took over MSI's business. The "practical consequences of the transaction" resulted in the "transfer of control of [MSI's] business" as it existed in 2008 to CEATS.

## II. The Court Should Not Order the Production of Documents Withheld By Gary Wykidal.

Tickets.com also moves to compel the documents collected and logged by Gary Wykidal, an attorney for MSI. Mr. Wykidal is a California lawyer. He has never done legal work for CEATS. Mr. Wykidal's obligations to produce documents arise from a subpoena issued from the Central District of California. *Ex A*. Mr. Wykidal is not within this Court's jurisdiction. This is a matter for the Central District of California. *Ass'n of Am. Physicians & Surgs. v. Tex. Med. Bd.*, No. 5:07-CV-191, 2008 U.S. Dist. LEXIS 56496, at *3 (E.D. Tex. July 25, 2008) ("[I]t is clear that the court where the action is pending lacks jurisdiction to rule on subpoenas issued from other courts unless there is such a transfer or remittance").

In any event, Mr. Wykidal's documents fall into the same category as the MSI prosecution documents discussed in MSI's motion for a protective order. The five privileged documents were obtained by McDermott from Mr. Wykidal in connection with this litigation. They were shared *because of* the litigation. The common-interest privilege should apply to prevent their disclosure to Tickets.com.

6

### III. CEATS' Email Chains Containing Communications with its Outside Counsel Are Privileged.[3]

Tickets.com next challenges CEATS' privilege claims over emails containing communications from CEATS' attorneys at Knobbe and McDermott. Tickets.com incorrectly asserts that CEATS is withholding these documents on the grounds that they involve communications with Phillip Trad, the CEO of CEATS, who is also an attorney. *Motion at* 11; *see also id.* at 11 n.2 (identifying the entries at issue). <u>CEATS is not withholding documents on that basis.</u> Rather, CEATS is withholding the documents Tickets.com demands because they contain communications between CEATS and its outside counsel. For example, the "Basis for Privilege" listed for Entry No 26 states: "Email forwarding email from C. Duan*[4] [attorney with Knobbe] providing legal advice regarding trademark protection for CEATS." *See Motion Ex. 8* at 2. Similarly, Entry No. 48 is: "Email forwarding email from B. Bunker* [attorney with Knobbe] providing legal advice regarding potential patent infringement litigation and identifying potential defendants in litigation." *Id.* at 4; *see also id.* at 19 (Entry Nos. 285 and 295) (described as emails forwarding emails from Knobbe attorneys Stacy Halpern and Milan Kapadia); *id.* at 23 (Entry No. 348) (described as email forwarding email from McDermott attorney Tom Brown). Another document, Entry No. 322, is described as an email forwarding an email from Knobbe attorney Bill Bunker. *Id.* at 21. This document is sent to Tim Forstrom, a consultant for CEATS hired to prepare presentations to investors, but involves legal advice related to statements to investors – the subject matter of Forstrom's work. *Skane Decl.* ¶ 11.

---

[3] This argument applies to Entry Nos. 26, 48, 90, 103, 285, 295, 322, and 348, labeled by Tickets.com as the "Trad AC Documents." *See Motion* at 11. CEATS is producing the document identified as Entry No. 154.

[4] As indicated on the face of its privilege log, CEATS identified the attorneys appearing on the log by including an asterisk after their names. *Motion Ex. 8.* CEATS also submitted an attorney list with its original privilege log. *Ex. B.*

7

The attorney-client privilege applies to these documents. CEATS adequately described how these entries met the elements of the privilege. These entries contain communications from CEATS' outside counsel containing legal advice. The mere fact that officers or directors of CEATS forwarded these communications to other officers or directors of CEATS does not negate the privilege. *See Applied Med. Res. Corp. v. Ethicon, Inc.,* No. SACV 03-1329-JVS, 2005 U.S. Dist. LEXIS 41199, at *6 (C.D. Cal. May 23, 2005) ("Several courts have held, and Plaintiff concedes, that communications between non-attorneys within a corporation for the purpose of obtaining or relaying legal advice are protected by the attorney-client privilege."); *see also Santrade, Ltd. v. General Elec. Co.,* 150 F.R.D. 539, 545 (E.D.N.C. 1993) ("A document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds . . . [D]ocuments subject to the privilege may be transmitted between non-attorneys (especially individuals involved in corporate decision-making) so that the corporation may be properly informed of legal advice and act appropriately."). This is true even if the document is shared with a consultant, rather than an employee, provided the consultant needed to know the legal advice to perform his duties for the corporation. *Verschoth v. Time Warner, Inc.*, No. 00 Civ. 1339 (AGS), 2001 U.S. Dist. LEXIS 6693, at *8 (S.D.N.Y. May 21, 2001) ("An employee or agent of a corporation who shares responsibility for the subject matter of a communication would clearly need to be familiar with such communication").

CEATS also claims privilege over an email discussing legal advice provided by its outside counsel at Knobbe. Entry No. 90 is described as: "Email revealing legal advice from Knobbe* regarding prosecution of patents." *Motion Ex. 8* at 7. In the email, Milford Skane conveys information regarding Knobbe's opinion of the patents to Phillip Trad and Doug DeCinces. While the email does not literally forward a communication from an attorney, it

8

transmits legal advice to individuals involved in corporate decision-making "so that the corporation may be properly informed of legal advice and act appropriately." *Santrade, Ltd.*, 150 F.R.D. at 545. It therefore falls within the purview of the attorney-client privilege.

The last document in this category is Entry No. 103, which is described on CEATS' privilege log as: "Email sent to P. Trad* and B. Bunker* (but neglecting to include B. Bunker's email address) conveying information to facilitate the rendering of legal advice regarding communications with potential investors." *Motion Ex. 8* at 7. It was sent at 10:56 am. The text of the email includes a specific comment to Bill Bunker. Mr. Skane forgot to include Bill Bunker's email address, however. *Skane Decl.* at ¶ 12. After realizing this, at 12:39 pm, Mr. Skane sent an email with identical text, this time copying Bill Bunker and Milan Kapadia of Knobbe. *Id.* The latter email is identified as Entry No. 102 on the log and is not challenged by Tickets.com. CEATS should not be penalized because of a simple email mistake when the intent of the email was to seek the legal advice of outside counsel.

## IV. CEATS Is Entitled to Claim Work Product Protection Over Documents Prepared for Litigation.[5]

Tickets.com challenges some of the documents that CEATS has withheld as work product. Tickets.com complains that CEATS is withholding these documents despite the fact that they do not include an attorney. *Motion* at 1-2. Not only is this incorrect – many of the so-called "Trad WP Documents" were sent to or from attorneys – but it is irrelevant. A party is permitted to withhold documents as work product even if they were not prepared by or for an

---

[5] This argument applies to Entry Nos. 72, 74-78, 87, 97-99, 104, 114-115, 137, 155-156, 192, 201-202, 204, 207, 213-214, 255, 319, 331, 358, and 380-381, labeled by Tickets.com as the "Trad WP Documents." *See Motion* at 13.

9

attorney. Fed. R. Civ. P. 26(b)(3); *see also Flashmark Techs. LLC v. GTECH Corp.*, No. 2:06-cv-205, 2007 U.S. Dist. LEXIS 57107, at *8-*9 (E.D. Tex. Aug. 6, 2007).

Moreover, notwithstanding Tickets.com's implication to the contrary, CEATS is not using the work product doctrine as an alternative to withholding these documents as attorney-client communications involving Phillip Trad. *See Motion* at 13. In fact, of all the documents Tickets.com challenges in this category, CEATS has only ever claimed the attorney-client privilege over one document, Entry No. 319, which is described as "Email forwarding email from M. Kapadia* providing legal advice regarding potential damages in patent infringement litigation." *Motion Ex. 8* at 21. Similar to the documents discussed in Section III, *supra*, CEATS claims the attorney-client privilege over this document as it is a communication between CEATS and its outside counsel at Knobbe – not because of the presence of Mr. Trad.

Tickets.com's primary argument appears to be that a non-practicing entity cannot claim work product protection over any of its documents. Tickets.com does not cite any support for this proposition. Instead, it cites to *ReedHycalog UK, Ltd. v. Baker Hughes Oilfield Operations, Inc.* 242 F.R.D. 357, 360-61 & n.2 (E.D. Tex. 2007) as holding: "[T]here is no work-product immunity for documents prepared in the regular course of business rather than for purposes of the litigation." *Motion* at 10. CEATS does not disagree. The documents it claims work product protection over were documents prepared for purposes of litigation.

CEATS withheld documents pertaining to discussions surrounding the decision to enforce its patents. Several of the documents that Tickets.com challenges are communications between CEATS and its outside counsel regarding potential defendants and litigation strategy. Entry Nos. 74 and 75, for example, are an email and attachment sent to attorneys at Knobbe for the purpose of discussing potential litigation against ticketing companies. *Motion Ex. 8* at 6.

10

Eight additional challenged documents are likewise correspondence between CEATS and Knobbe about potential patent infringement litigation. *See id.* at 5 (Entry No. 72); *id.* at 9 (Entry No. 137); *id.* at 13 (Entry Nos. 192, 201-202, and 204); *id.* at 14 (Entry Nos. 213-214). These communications were sent for the primary purpose of planning for future litigation. *Skane Decl.* at ¶ 13.

The work product doctrine is designed to protect such documents. In the Fifth Circuit, the privilege is not limited to documents prepared for a specific litigation but "can apply where litigation is not imminent, as long as the primary motivating purpose behind the creation was to aid in possible future litigation." *Mondis Tech. v. LG Elecs., Inc.*, No. 2:07-cv-565-TJW, 2011 U.S. Dist. LEXIS 47807, at *14-*15 (E.D. Tex. May 4, 2011) (quoting *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000)); *see also Fractus v. Samsung Elecs. Co.*, No. 6:09-cv-00203, 2011 U.S. Dist. LEXIS 110936, at *21 (E.D. Tex. Jan. 20, 2011) (finding that documents "identifying potential infringers of Fractus' patents with the clear goal of filing suit against the alleged infringers, if necessary" were protected by the work product doctrine). The business practices of CEATS do not change this basic legal principle. *See Mondis Tech.*, 2011 U.S. Dist. LEXIS 47807, at *14 -*17 (applying the work product doctrine to documents prepared by an intellectual property holding company that licenses and enforces the patents-in-suit).

CEATS also claims work product protection over documents prepared by or communicated between Mr. Skane and Mr. Trad and others affiliated with CEATS. *Motion Ex. 8* at 6 (Entry No. 76-78), 10 (Entry Nos. 155-156), 14 (Entry No. 207), 17 (Entry No. 255), 21 (Entry Nos. 319, 331), 23 (Entry No. 358), and 25 (Entry Nos. 380-381). The work product doctrine is not limited to communications sent to of from attorneys, however. Rather, the doctrine protects all documents prepared *by of for a party or a party's representative* for the

11

purpose of litigation, whether or not the documents were prepared by an attorney. *Flashmark Techs.*, 2007 U.S. Dist. LEXIS 57107, at *8-*9 (holding that "[t]he clear language of Rule 26(b)(3) invalidates" the argument that the work product privilege "is not applicable because the documents were either created by or for non-attorneys"). Once again, the nature of CEATS' business does not change this fact.

Even if Tickets.com were correct that a company like CEATS cannot *generally* assert work product protection over its documents, such a company certainly can assert work product protection over documents *related to the litigation at issue*. This is precisely the rationale for the work product doctrine. *Cline v. Advanced Med. Optics, Inc.,* No. 2:08-cv-62, 2009 U.S. Dist. LEXIS 56050, at *9 (E.D. Tex. Mar. 6, 2009) ("The work product privilege exists to promote the adversary system by safeguarding the fruits of an attorney's trial preparation from the discovery attempts of an opponent. At its core, the work product doctrine shelters the mental process of the attorney, providing a privileged area within which he can analyze and prepare his client's case") (internal quotations and citations omitted). Yet, <u>Tickets.com challenges communications between CEATS and its attorneys at McDermott about the filing of this litigation</u>. Entry Nos. 97-99, for example, are emails between Milford Skane, Phillip Trad, and McDermott attorneys occurring two months before this lawsuit was filed. *Motion Ex. 8* at 7. The emails are described as identifying "potential defendants in CEATS' patent infringement litigation." *Id. See also id.* at 6 (listing Entry No. 87 as an email between CEATS and outside counsel about the litigation); *id.* at 7 (Entry No. 104) (same); *id.* at 8 (Entry Nos. 114-115) (same). There is no doubt that communications between a client and its outside counsel about the filing of the litigation at issue are protected by work product.

## CONCLUSION

For the reasons stated above, CEATS respectfully requests that the Court deny Tickets.com's motion.

Respectfully submitted,

| | |
|---|---|
| | */s/ Rebecca A.H. Watson* |
| Daniel R. Foster | J. Thad Heartfield (Texas Bar No. 09346800) |
| Christopher D. Bright | THE HEARTFIELD LAW FIRM |
| Jennifer Kalnins Temple | 2195 Dowlen Road |
| McDERMOTT WILL & EMERY LLP | Beaumont, Texas 77706 |
| 18191 Von Karman Avenue, Suite 500 | (409) 866-3318 |
| Irvine, California 92612 | |
| (949) 757-7103 | Fay E. Morisseau (Texas Bar. No. 14460750) |
| | McDERMOTT WILL & EMERY LLP |
| Michael S. Nadel | 1000 Louisiana Street, Suite 3900 |
| Rebecca A.H. Watson | Houston, Texas 77002 |
| McDERMOTT WILL & EMERY LLP | (713) 653-1700 |
| 600 Thirteenth Street, N.W. | |
| Washington, D.C. 20005 | |
| (202) 756-8000 | |
| | |
| Natalie A. Bennett | |
| McDERMOTT WILL & EMERY LLP | |
| 227 West Monroe Street | |
| Chicago, Illinois 60606 | |
| (312) 984-7631 | |

*Attorneys for Plaintiff CEATS, Inc.*

**CERTIFICATE OF SERVICE**

  I hereby certify that on December 2, 2011, the foregoing was electronically filed with the CM/ECF system, which will send a notification of such filing to all counsel of record.

              <u>*/s/ Rebecca A.H. Watson*</u>
              Rebecca A.H. Watson