**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **CEATS, INC.** | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | CASE NO. 6:10cv120 |
| | § | PATENT CASE |
| **CONTINENTAL AIRLINES, INC.,** | § | |
| **ET AL.** | § | |
| | § | |
| Defendants | § | |

## ORDER

Before the Court is Defendant Tickets.com, Inc.'s Motion to Compel Production of Documents (Doc. No. 693, "MOTION"). After consideration of the parties' submissions, the Court **GRANTS-IN-PART** Defendant's motion.

## BACKGROUND

CEATS, Inc. ("CEATS") filed suit against Tickets.com, Inc. ("TDC"), among others, alleging infringement of several patents, all which claim priority to U.S. Patent Application No. 09/295,577 ("the '577 application"). The '557 application was initiated by MS Integrate ("MSI") and prosecuted by the law firm of Blakely Sokoloff Taylor & Zafman LLP ("Blakely"). MOTION at 1; Doc. No. 718 ("OPP.") at 2. On December 21, 2009, MSI executed an Asset Purchase Agreement ("APA"), deemed effective on October 14, 2008, which purportedly assigned MSI's intellectual property to CEATS. *Id.* at 2; OPP. at 2. CEATS also assumed all of MSI's known liaiblities, but the companies otherwise remained, and remain, separate entities—a fact that CEATS's representatives have repeatedly confirmed throughout this litigation. *Id.* at 2–3.

On September 12, 2008, prior to the execution of the APA, the law firm of Knobbe Martens

Olson & Bear LLP ("Knobbe") took over prosecution of the patents-in-suit. OPP. at 2; MOTION at 4. Knobbe continued prosecuting the patents-in-suit after execution of the APA. *Id.* During this time, Knobbe was also pitching itself as potential litigation counsel for any enforcement actions related to the patents-in-suit. *Id.* at 2–3. Despite Knobbe's experience with the patents-in-suit, CEATS selected the law firm of McDermott Will & Emery LLP ("McDermott") to file the present litigation. *Id.* at 3.

On April 15, 2011, CEATS served its original privilege log which included entries of MSI documents provided to CEATS. MOTION at 3–4; OPP. at 3. The MSI documents are mainly communications between MSI and Blakely or Knobbe and relate to the prosecution and enforcement of the patents-in-suit. *Id.* After receipt of CEATS's privilege log, TDC sent a letter to CEATS contending that all MSI documents dated prior to October 14, 2008, the effective date of the APA, were not privileged. *Id.* After some back and forth, CEATS produced approximately 48 MSI documents in full or redacted form, but continues to assert that the remaining MSI documents are privileged. OPP. at 3.

TDC also served a subpoena on MSI's attorney Gary Wykidal, who formerly represented MSI in matters unrelated to the prosecution of the patents-in-suit. MOTION at 4; OPP. at 2. Mr. Wykidal informed TDC that he provided all five responsive documents to CEATS's attorneys and they had created a privilege log regarding those documents. *Id.*

Also listed on CEATS's privilege log are documents from Phillip Trad, the President and CEO of CEATS. MOTION at 4–5; OPP. at 3. TDC challenged the privilege designation of Mr. Trad's documents because, while an attorney, he is not CEATS's attorney or counsel and his role within the company is strictly non-legal. *Id.* After TDC's challenge, CEATS produced a subset of

Mr. Trad's documents, but maintains that the remaining documents are either privileged attorney-client communications or protected work product. *Id.*; OPP. at 7–12.

Throughout the course of this litigation, the parties have successfully resolved many of their differences regarding CEATS's privilege log. OPP. at 3–4. Nevertheless, CEATS and TDC are at an impasse regarding the documents at issue in the current motion. The Discovery Order in this case requires that when a motion to compel privileged documents is filed, the party asserting privilege must, within 30 days, produce the documents for *in camera* review. (Doc. No. 386 at ¶ 5). Pursuant to the Discovery Order, on December 15, 2011, CEATS produced the relevant documents and related sworn declarations for the Court's review. At this time, the Court has reviewed all of the challenged documents.

## LEGAL STANDARD

"The attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice. This privilege also protects communications from the lawyer to his client, at least if they would tend to disclose the client's confidential communications. Its application is a question of fact, to be determined in light of the purpose of the privilege and guided by judicial precedents. The burden on demonstrating the applicability of the privilege rests on the party who invokes it." *Hodges, Grant & Kaufman v. United States*, 768 F.2d 719, 720-21 (5th Cir. 1985).

Although disclosure to a third-party normally waives the attorney-client privilege, a privileged communication is not waived if it is shared with a third-party who has a common legal interest regarding the subject matter of the communications. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 711 (5th Cir. 2001). The common legal interest doctrine is normally only applied to co-parties and their counsel in actual litigation or potential co-parties and their counsel. *Id.* at 710.

Work product protection applies only to materials prepared in anticipation of litigation. FED.R.CIV.P 26(b)(3). Litigation need not be imminent for the protection to apply, so long as the "primary motivating purpose behind the creation [of the protected materials] was to aid in possible future litigation." *In re Kaiser Aluminum and Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (citations omitted). The party claiming work product protection must demonstrate: (1) the materials sought are tangible things; (2) the materials were prepared in anticipation of litigation; and (3) the materials were prepared by or for a party's representative. *SEC v. Brady*, 238 F.R.D. 429, 441 (N.D. Tex. 2009). Work product protection is waived only if the materials are given to adversaries or treated in manner that substantially increases the risk that an adversary will come to possess the materials. *Ferko v. National Ass'n for Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 400–01 (E.D. Tex. 2003) (Schell, J).

## ANALYSIS

The documents at issue fall into four categories: (1) "the MSI documents," which relate to prosecution of the patents-in-suit and were given to CEATS by MSI; (2) "the Wykidal documents," which were given to CEATS by MSI's counsel, Mr. Wykidal; (3) "Trad A/C documents" which are emails sent or received by Mr. Trad; and (4) "Trad Work Product documents."

*The MSI Documents*[1]

As an initial matter, the Court has reviewed the documents and they are, without question, privileged communications between MSI and its attorneys. Nonetheless, the Court must determine whether CEATS can claim attorney-client privilege over these documents. CEATS contends that the attorney-client privilege transferred from MSI to CEATS through the execution of the APA. OPP. at 5–6. TDC disagrees and argues that the APA was a mere transfer of assets and CEATS did

---

[1] These documents are listed as entry nos. 11, 575-79, 581, 586-91, 594, 597-601, 603, and 605 in CEATS's privilege log.

4

not acquire control over MSI's corporate decisions, therefore, the attorney-client privilege did not pass from MSI to CEATS. MOTION at 6–7.

The Court has previously recognized that the mere transfer of single patent from one corporation to another does not transfer the attorney-client privilege. *Soverain Software, LLC v. The Gap, Inc.*, 340 F. Supp. 2d 760, 763 (E.D. Tex. 2004). However, the Court also held that this bright-line rule does not apply equally to the myriad of ways control of a corporation can change hands. *Id.* Instead, whether "the attorney-client relationship transfers . . . to the new owners turns on the practical consequences rather than the formalities of the particular transaction." *Id.*

After review of the APA between MSI and CEATS (MOTION, Ex. 1), while a close call, the Court finds that the agreement was not a mere transfer of assets. The APA did not simply transfer ownership of U.S. Patent No. 7,454,361. The APA defined the acquired assets to include far more than the patent. MSI transferred all of its "intellectual property assets related to [MSI's] ticketing and booking software system (the 'System')." *Id.* at 1. MSI also transferred, among other things: (1) all "trade secrets, know-how and inventions" related to the System; (2) all "copyrights, copyrightable works and works of authorship" related to the System; (3) all data and source code related to the System; and (4) all goodwill associated with the System. *Id*. at ¶ 1.1. Beyond mere assets, CEATS also assumed approximately $1.6M of MSI's debt—all of MSI's known liabilities at the time. *Id.* at ¶ 2.1–2.2; Ex. D.

Mr. Skane, President and CEO of MSI and Chairman of CEATS, has provided a sworn declaration stating that prior to the APA, MSI was no longer selling software and its sole business was to prosecute and enforce its intellectual property. OPP., DECL. OF MILFORD SKANE at ¶¶ 3–4. As a result of the APA, MSI was left with no known assets or liabilities. In essence, CEATS took over MSI's only business, MSI has not performed any further business, and MSI has merely been

winding up. *Id.* at ¶ 6.

However, because CEATS and MSI maintained separate corporate entities, TDC argues that they cannot now claim that the practical consequence of the APA was to transfer control of MSI's business to CEATS. Doc. No. 724 ("REPLY"), at 2. The Court fails to see the inconsistency in CEATS's position. While CEATS and MSI maintained separate corporate entities and counsel—CEATS effectively purchased all of MSI's business and assumed all of its known liabilities. The practical consequence of the APA resulted "in the transfer or control of the business and the continuation of the business under new management." *Soverain*, 340 F. Supp. 2d at 763. A further result of the APA is that CEATS acquired the attorney-client privilege associated with MSI's business related to prosecution and enforcement of the patents-in-suit. The APA is akin to a large diversified corporation selling a single business division to another entity. As a result of the APA, CEATS did not acquire any and all claims of attorney-client privilege that MSI might hold. CEATS did, however, obtain the attendant privileges to the MSI business that it acquired.

After a careful review of the MSI documents, the Court finds that they are all related to the prosecution of the patents-in-suit. Because the prosecution of the patents-in-suit is directly related to the MSI business that CEATS acquired from MSI, CEATS has also acquired the associated privileges. Accordingly, CEATS may assert the attorney-client privilege to protect disclosure of the MSI documents.

*The Wykidal Documents*[2]

CEATS first contends that this Court lacks jurisdiction to resolve this dispute because Mr. Wykidal's obligations to produce documents arise from a subpoena issued from the Central District of California. OPP. at 6. Mr. Wykidal, however, stated during his deposition that CEATS's attorneys

---

[2] These documents are listed as entry nos. Wykidal 1, 2, 4 and 5. CEATS has not produced, *in camera*, a document designated as Wykidal 3.

reviewed each of the privileged documents and created his privilege log. MOTION at 11. Therefore, to the extent that CEATS is in possession of Mr. Wykidal's documents, the issue of whether *CEATS* can refuse to produce the purported privileged documents is properly before the Court.

CEATS also contends that the common legal interest extension of the attorney-client privilege ("CLI privilege") should shield Mr. Wykidal's documents from disclosure. MOTION at 6; *see also* Doc. No. 717 (NON-PARTY MSI'S MOTION FOR A PROTECTIVE ORDER). Normally, the attorney-client privilege is waived upon disclosure of privileged material to a third party. However, where the third-party shares a common legal interest with the producing party, the CLI privilege may extend the attorney-client privilege such that it is not waived by the disclosure. *Ferko v. NASCAR*, 219 F.R.D. 396, 401 (E.D. Tex. 2003). The CLI privilege protects two types of communications: "communications between co-defendants in actual litigation and their counsel; and (2) communications between potential co-defendants and their counsel." *In re Santa Fe*, 272 F.3d 705, 710 (5th Cir. 2001) (internal citations omitted). The CLI privilege is to be narrowly construed because it is "an obstacle to truth seeking." *Id.* For the CLI privilege to apply to communications between potential co-parties, "there must be a palpable threat of litigation at the time of the communication." *Id.*

MSI is not a party to this litigation, therefore, the only avenue for the CLI privilege to apply is if MSI and CEATS were potential co-parties under "a palpable threat of litigation at the time [MSI's counsel, Mr. Wykidal, shared the documents with CEATS]." *Id.* Throughout this litigation representatives of MSI and CEATS have unequivocally stated that the two companies are separate entities and that MSI is a non-party. In fact, MSI has filed a separate motion for protective order in this case, explicitly as a "non-party." *See* Doc. No. 717 ("*Non-Party* MS Intergrate's Motion For A Protective Order.") (emphasis added). As such, the Court finds that MSI and CEATS are neither

7

co-parties nor potential co-parties to this litigation and the CLI privilege is not applicable.

Despite the CLI privilege not applying, the Court must also determine whether the Wykidal documents relate to the transfer of MSI's business, and attendant privileges, to CEATS. As previously explained, CEATS did not acquire any and all claims of attorney-client privilege that MSI might hold, but only the privileges associated with the business it acquired from MSI. The Court has reviewed the Wykidal documents *in camera* and finds that: (1) Wykidal Entry No. 1 is not related to the transfer of MSI's business to CEATS and the attendant claims of attorney-client privilege are held solely by MSI; therefore, MSI has waived privilege regarding this document because of the disclosure to third-party CEATS; (2) Wykidal Entry No. 2 is related to the transfer of the business, therefore, the privilege transferred to CEATS and the document remains privileged; (3) Wykidal Entry Nos. 4 and 5 are related to work Mr. Wykidal undertook on behalf of MSI when its interests were directly opposed to CEATS, therefore, the privilege cannot transfer and has been waived. As such, CEATS is **ORDERED** to produce Wykidal Entry Nos. 1, 4 and 5 to TDC.

*Trad A/C Documents*[3]

TDC asserts that CEATS is withholding non-privileged documents sent or received by Mr. Trad, despite Mr. Trad admitting that he is not CEATS's attorney. MOTION at 11–12. CEATS contends that these documents are privileged because they are email communications between CEATS and its outside counsel. OPP. at 7. TDC, however, does not request that the attorney-client communications be produced. Instead, TDC contends that some of the withheld emails are actually "email strings" that may contain non-privileged material which TDC asserts CEATS should produce while redacting the privileged portions. REPLY at 3.

CEATS cites cases relying on *Upjohn v. United States*, 449 U.S. 383, 396 (1981), where

---

[3] These documents are listed as entry nos. 26, 48, 90, 103, 285, 295, 322, and 348 in CEATS's privilege log.

Courts held that communications between executives in a corporation related to obtaining and discussing legal advice are protected by the corporate attorney-client privilege. *Applied Medical Resources, Corp. v. Ethicon, Inc., et. al.*, 2005 U.S. Dist. LEXIS 41199 at *6 (C.D. Cal. May 23, 2005) (citing *Santrade, Ltd. v. General Elec. Co.*, 150 F.R.D. 539 (E.D.N.C. 1993); *In Re Grand Jury*, 758 F. Supp. 1411 (D. Colo. 1991); *AT&T Corp. v. Microsoft Corp.*, 2009 U.S. Dist. LEXIS 8710, 2003 WL 21212614 (N.D. Cal. 2003)). The Court agrees with this general proposition. TDC is also correct that non-privileged material in an "email string" may be properly produced while the privileged material is redacted. However, after *in camera* review of the relevant documents, the Court finds the each email is wholly privileged. All of the emails at issue are either communications with CEATS's outside counsel that have been forwarded to other executives in the company, or are related to obtaining and discussing legal advice between executives. Accordingly, the "Trad A/C Documents" are privileged and need not be produced.

    *Trad Work Product Documents*[4]

TDC contends that CEATS is withholding and claiming work product protection for non-attorney communications sent or received by Mr. Trad. MOTION at 13–14. TDC also implies that because CEATS's only business is litigation, the documents in question were prepared in the regular course of CEATS's business and thus cannot be work product. *Id.* In other words, TDC contends that because CEATS is a non-practicing entity whose sole business is litigation, CEATS cannot claim work product protection over any of its materials because they were prepared in the course of CEATS's ordinary business. CEATS asserts that the documents in question either include attorneys or are work product despite the documents not being prepared by an attorney. OPP. at 9–10.

---

[4] These documents are listed as entry nos. 72, 74-78, 87, 97-99, 104, 114-115, 137, 155-156, 192, 201-202, 204, 207, 213-214, 255, 319, 331, 358, and 380-381 in CEATS's privilege log.

9

After *in camera* review of the documents and related declarations, the Court finds that the documents in question were created in anticipation of litigation and are protected by the work product doctrine. A subset of the documents are communications between CEATS and its outside counsel regarding the filing of this litigation and are, without question, work product. Further, a plain reading of Rule 26(b)(3) reveals that the work product privilege applies if the document was prepared "by or for another party or by or for that party's representative." Fed. R. Civ. R. 26(b)(3); *see also Flashmark Techs., LLC v. GTECH Corp.*, 2007 U.S. Dist. LEXIS 57107, at *8–9 (E.D. Tex. August 6, 2007) (Giblin, M.J.) (citing *In re Grand Jury Proceedings*, 43 F.3d 966, 972 (5th Cir. 1994)). Therefore, CEATS's assertion of work product protection over documents not prepared by an attorney, but which were created in anticipation of litigation, is valid. Those documents are not discoverable absent a showing of substantial need. FED. R. CIV. P. 26(b)(3)(ii).

Based on the Court's review, CEATS has not used its status as a non-practicing entity whose sole business is litigation to make a blanket assertion of work product protection to preclude discovery of all of its documents. The Court's review reveals that CEATS only withheld documents related to strategic decisions regarding future litigation and communications with outside counsel. Moreover, the Court rejects TDC's unsupported contention that a non-practicing entity should not be afforded any work product protection because its "ordinary business" is litigation.

## CONCLUSION

Based on the foregoing, the Court **GRANTS-IN-PART** TDC's Motion to Compel to the extent CEATS is required to produce the noted Wykidal documents. Otherwise, TDC's motion is **DENIED** as to the remaining documents at issue.

**So ORDERED and SIGNED this 26th day of January, 2012.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**